# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CINCINNATI INSURANCE CO.,** ) | **CASE NO: 1:25-cv-1926** |
| **Plaintiff,** ) | |
| ) | **Judge Dan Aaron Polster** |
| **v.** ) | |
| ) | **OPINION AND ORDER** |
| **DOLLAR TREE STORES, INC.,** *et al.* ) | |
| **Defendants** ) | |

Before the Court is Defendant Dollar Tree Stores, Inc.'s ("Dollar Tree") Motion to Dismiss, or in the alternative stay this case or transfer it to the United States District Court for the District of Connecticut. ECF 8. Also before the Court is Plaintiff Cincinnati Insurance Company's ("Cincinnati Insurance") Motion to Remand to state court. ECF 10. Both motions have been fully briefed and are now ripe for ruling. For the reasons discussed herein, Dollar Tree's motion is **GRANTED**, and Cincinnati Insurance's motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Effective December 16, 2019, Dollar Tree and Zephyr Solutions, LLC[1] ("Zephyr") and Dollar Tree entered into a Product Supply Agreement ("Agreement"). ECF 8-1 at 3. As part of the Agreement, Zephyr agreed to supply Dollar Tree with helium products to be sold at Dollar Tree stores, along with the high-pressure cylinders required to transport and store the helium. *Id.*; *see also* ECF 8-5, Agreement. Also as part of the Agreement, Zephyr was required to obtain insurance, including Commercial General Liability insurance covering claims for personal injury, naming Dollar Tree as an additional insured. ECF 8-5, Agreement § 14 (requiring that Zephyr's "general

---

[1] For purposes of this Order, Zephyr Solutions, LLC and Zephyr Holdings Solutions, LLC are singularly and collectively referred to as "Zephyr."

liability policy must name Dollar Tree Stores, Inc. . . . as additional insured" and "that any insurance policy owned by Dollar Tree Stores, Inc. . . . will be considered as excess and non-contributory to the underlying policy."). In accordance with the terms of the Agreement, Zephyr purchased the Cincinnati Policy from Cincinnati Insurance and named Dollar Tree "as an additional insured for General Liability when required by written contract with the named insured." ECF 8-3, Certificate of Liability Insurance.

On June 16, 2022, Norma Pellot was purchasing helium at a Dollar Tree store in Norwalk, Connecticut, when a helium tank nozzle allegedly exploded and injured her hand. ECF 8-1 at 4. Pellot filed a lawsuit in Connecticut state court on October 5, 2022, naming Dollar Tree as a defendant (the "Underlying Complaint" or "Underlying Action"). *Id.*; *see also* ECF 8-6, Underlying Complaint. On June 13, 2023, Dollar Tree moved for leave to implead Zephyr in the Underlying Action as a third-party defendant, as the helium nozzle referenced in the Underlying Action was manufactured by Zephyr. ECF 8-1 at 4. The Connecticut state court granted Dollar Tree's motion on June 15, 2023, and the summons was issued as to Zephyr on June 29, 2023. *Id.* Subsequently, on January 2, 2024, the Connecticut state court ordered Pellot to file an amended complaint stating facts showing the interest of Zephyr in the Underlying Action and summoning Zephyr to appear as a defendant in the Underlying Action (and not just as a third-party defendant). *Id.* On March 5, 2024, Pellot filed an amended complaint alleging, as to Zephyr, products liability claims under Connecticut General Statutes Section 52-572 et seq. *Id.* On April 22, 2025, Pellot withdrew her claims against Zephyr. *Id.*

On July 28, 2025, Dollar Tree moved to implead Cincinnati Insurance as a third-party defendant in the Underlying Action, arguing that Cincinnati Insurance "may be liable for all or part of Plaintiff Norma Pellot's claim against Dollar Tree . . . because Dollar Tree constitutes an

2

additional insured under the Commercial General Liability insurance policy sold to Zephyr Solutions LLC ("Zephyr"), and as such owes Dollar Tree a defense and indemnity for the Pellot Claim under the terms of the policy." *Id.* at 5; *see also* ECF 8-7, Motion to Implead Cincinnati Insurance in Underlying Action at 1. Dollar Tree also sent Cincinnati Insurance courtesy copies of its motion on July 28, 2025, and informed Cincinnati Insurance that "[s]hould we somehow be denied leave to file for any reason, we will be immediately re-filing suit in the United States District Court for the District of Connecticut." ECF 8-8, Dollar Tree Email to Cincinnati Insurance (emphasis added). On August 11, 2025, the Connecticut state court denied Dollar Tree's motion. ECF 8-1 at 5.

### B. Procedural Background

On August 15, 2025, just four days after the Connecticut state court denied Dollar Tree's motion to implead Cincinnati Insurance, Cincinnati Insurance filed the instant action in Ohio state court (the "Cincinnati Complaint"). ECF 1-16. It sought a declaration that Cincinnati Insurance has no obligation to provide any coverage to Dollar Tree related to the Underlying Action for a variety of reasons. *See* ECF 8-10, Cincinnati Complaint at 22-23. The Cincinnati Complaint named Dollar Tree (Virginia citizen), Norma Pellot (Connecticut citizen), and Zephyr (Ohio citizen) as defendants. *Id.* ¶¶ 1-5. A few days later, on August 20, 2025, and in accordance with the email Dollar Tree sent to Cincinnati Insurance on July 28, 2025, Dollar Tree filed its coercive complaint against Cincinnati Insurance in the federal court for the District of Connecticut (the "Dollar Tree Complaint").[2] ECF 8-1 at 6; *see also* ECF 8-9, Dollar Tree Complaint. The Dollar Tree Complaint

---

[2] The Dollar Tree Complaint has been essentially stayed, pending the disposition of the Motion to Dismiss and Motion to Remand in the instant matter. *See* Order Granting Motion for Extension of Time, Case No. 3:25-cv-01340 (Oct. 15, 2025, D. Conn.), ECF 17 (granting a joint motion to extend Cincinnati Insurance's deadline to file a responsive pleading until November 16, 2025); Order Granting Motion for Extension of Time, Case No. 3:25-cv-01340 (Oct. 24, 2025, D. Conn.), ECF 19 (granting a joint motion to extend deadline for the parties' Federal Rule of Civil Procedure 26(f) Conference Report until November 23, 2025).

named only Cincinnati Insurance as a defendant, and sought a general declaration "adjudging the rights and obligations of the parties with respect to the defense and indemnity coverage for the Underlying Claims" and damages against Cincinnati Insurance for breach of contract and other torts under Connecticut state law. ECF 8-9 at 27.

On September 12, 2025, Dollar Tree removed the Cincinnati Complaint to this Court on the basis of diversity jurisdiction, arguing that Zephyr is an improper defendant and that "the citizenships of Cincinnati and the proper defendants are completely diverse and the amount in controversy exceeds $75,000.00 exclusive of interest and costs." ECF 8-1 at 6; *see also* ECF 1, Notice of Removal. Dollar Tree filed its Motion to Dismiss on September 19, 2025. ECF 8. In the alternative, Dollar Tree requested that this Court either stay this action during the pendency of the Dollar Tree Complaint or transfer this action to the United States District Court for the District of Connecticut. Cincinnati Insurance filed its response in opposition on October 3, 2025, ECF 11, and Dollar Tree filed its reply in support on October 17, 2025, ECF 13. At the same time as the briefing on the Motion to Dismiss, Cincinnati Insurance filed a Motion to Remand on September 30, 2025. ECF 10. Dollar Tree filed its response in opposition on October 17, 2025, ECF 12, and Cincinnati Insurance filed its reply in support on October 31, 2025, ECF 16.

Both the Motion to Dismiss and the Motion to Remand would completely dispose of this matter. As such, the Court finds it appropriate to address the arguments in both motions in a singular order and opinion.

**II. STANDARD OF REVIEW**

A defendant may remove a case from state court only if the case could have been filed in federal court in the first place. *See Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 259 (6th Cir. 1996). For cases arising from diversity, the federal court has jurisdiction over a matter if the

4

amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332. Further, federal courts must have complete diversity of citizenship, meaning a plaintiff cannot reside in the same state as any defendant. *See Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 664 (6th Cir. 2004) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). However, fraudulent joinder creates an exception to the complete diversity requirement. *See Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012).

Fraudulent joinder occurs when a plaintiff adds a non-diverse defendant to destroy complete diversity, despite having "no colorable cause of action" against them. *McCann v. Ill. Tool Works Inc.*, 2025 WL 1928876, at *2 (N.D. Ohio July 14, 2025) (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011)). Fraudulent joinder exists when there can be no recovery against that defendant under state law for either the cause of action or the alleged facts. *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotation omitted). A sign of fraudulent joinder is "a lack of factual specificity" when referring to a non-diverse defendant. *See Tippett v. Nestle USA, Inc.*, 2025 WL 1592230, at *1 (N.D. Ohio June 5, 2025); *Applegarth v. Power Home Solar, LLC*, 2025 WL 712758, *5 (S.D. Ohio Mar. 5, 2025) ("[C]ourts have found fraudulent joinder when there is a lack of factual specificity as to non-diverse defendants and when a complaint makes generic reference to all defendants but targets the diverse defendants.").

Parties against which there is no colorable cause of action are deemed fraudulently joined and must be dismissed from actions removed to federal court. *See West v. Visteon Corp.*, 367 F.Supp.2d 1160, 1165 (N.D. Ohio 2005) (dismissing the non-diverse defendant after determining they were fraudulently joined). Thus, these parties are not considered for determining diversity jurisdiction. *See Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)

(affirming the district court denial of plaintiff's motion for remand when it determined a defendant was fraudulently joined).

When considering possible fraudulent joinder, the court reviews disputes of fact and any ambiguities in the controlling state law in favor of the non-moving party. *See id.* (quoting *Alexander*, 13 F.3d at 949). The removing party has the burden of proving a defendant was fraudulently joined by presenting sufficient evidence that a plaintiff has no colorable cause of action against the non-diverse defendant under state law. *See id.* (citing *Alexander*, 13 F.3d at 949).

**III. ANALYSIS**

**A. Subject-Matter Jurisdiction and Fraudulent Joinder[3]**

As noted above, the Cincinnati Complaint seeks a determination that Dollar Tree has no contractual right for indemnification by Cincinnati Insurance from a personal injury lawsuit in Connecticut. ECF 1-16, Cincinnati Complaint at 22-23. However, even when viewing the facts in favor of the non-moving party, Cincinnati Insurance, there is good reason to believe that Zephyr was fraudulently joined as a defendant for the sole purpose of destroying complete diversity and keeping the Cincinnati Complaint in Cincinnati Insurance's preferred forum.

To begin, Cincinnati Insurance seeks judicial declarations only against Dollar Tree. *Id.* The only discussion of Zephyr in the complaint and motion practice is to identify it as the named party on the insurance contract with Cincinnati Insurance. But this dispute seeks to determine whether Dollar Tree should be covered as an "additional insured" on that policy. *Id.* at 23. Besides including certain provisions in its insurance contract and the existence of the cross-claim between Dollar Tree and Zephyr in Underlying Action, there is no mention of Zephyr in the Cincinnati Complaint.

---

[3] It is unclear to this Court why Norma Pellot, the plaintiff in the Underlying Action, is named as a defendant in the Cincinnati Complaint – a complaint that exclusively deals with an insurance contract that has nothing to do with Pellot. However, since Pellot's citizenship has no bearing on whether this Court has diversity jurisdiction over the Cincinnati Complaint (as she is a Connecticut citizen), her status will not be addressed.

*Id.* The lack of factual specificity and the absence of an assertion of recovery against Zephyr under Ohio law are both indicators that fraudulent joinder exists because the actual target of the pleading is the diverse defendant, Dollar Tree.

In its Motion for Remand, Cincinnati Insurance argues that Dollar Tree actually agreed that Zephyr is an indispensable party to the Cincinnati Complaint. ECF 10 at 2 ("[Cincinnati Insurance] believes that [Zephyr] is a necessary party to its Dec Action. In fact, [Dollar Tree] even said so in its Third-Party Complaint against [Zephyr] at page 4 where it stated that, 'Zephyr is a necessary party to Plaintiff's action . . .'" (emphasis in original)). But this confuses the cases. Dollar Tree argued that Zephyr's inclusion in the Underlying Action, which is a personal injury tort matter, is necessary because Zephyr supplied Dollar Tree with the helium tanks that gave rise to that action, and Zephyr had agreed to indemnify Dollar Tree against personal injury claims as part of their Agreement. ECF 10-1, Dollar Tree's Third-Party Complaint Against Zephyr at 3-4; *cf.* ECF 12 at 9-10 ("Dollar Tree's separate and independent third-party action against Zephyr does not involve Cincinnati and arises out of a contract (the Product Supply Agreement) that Cincinnati is not a party to. Cincinnati cannot claim Dollar Tree's claims (and assertions) against Zephyr as its own."). Conversely, Dollar Tree has stated multiple times in its Motion to Dismiss and Opposition to Remand that Zephyr is not a necessary party to the present action. *See, e.g.*, ECF 8-1 at 13; ECF 12 at 9-10.

Cincinnati Insurance further argues that Zephyr is an indispensable party to the Cincinnati Complaint because Zephyr "is the most important Defendant from the point of view of interpreting the [Cincinnati] Policy, which is what [Cincinnati Insurance's] Dec Action is all about." ECF 10 at 6; *see also id.* (arguing that Zephyr is "a necessary party to the Dec Action because it is the named insured under the [Cincinnati] Policy and the *res* of the Coverage Dec Action is the

7

insurance Contract between [Cincinnati Insurance] and [Zephyr]"). Under Ohio law, "[t]he role of courts in examining contracts is to ascertain the intent of the parties." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. Comm'rs*, 2007-Ohio-5026, ¶ 18, 875 N.E.2d 561, 566). When there is a dispute about the terms of the contract, courts apply the plain language of the contract. *Id.* The plain language of the insurance contract at issue is whether Dollar Tree was an "additional insured" under the policy. In the Cincinnati Complaint, Cincinnati Insurance quotes several sections of the Cincinnati Policy that it believes are relevant to this determination. *See* ECF 1-16 ¶ 9 (including five pages of various sections from the Cincinnati Policy). Cincinnati Insurance discusses many of these same sections in its motion practice. *See, e.g.*, ECF 10 at 4-5; ECF 11 at 2-3. However, Cincinnati Insurance puts forth no evidence to support its argument that Zephyr's participation in this case is necessary for a plain language analysis.

Cincinnati Insurance also asserts that Zephyr is an indispensable party because both parties will need testimony from Zephyr representatives "regarding multiple pieces of evidence, including all of the relevant contracts at issue here . . . , not to mention all matters related to the operation of the subject helium tank and 'tank spout' which are at issue in Ms. Pellot's tort lawsuit." ECF 10 at 4; *see also id.* at 15 ("Put simply, [Cincinnati Insurance] cannot pursue its coverage claims without [Zephyr], its named insured, as a party to the Dec Action since it needs [Zephyr] representatives to testify as to essential facts in order to prove its case under the [Cincinnati Policy]."). Without any discovery yet in this matter, it is impossible for the Court to determine whether or how necessary testimony from Zephyr may be. Whatever the answer may be, however, it is unclear why Zephyr must be a defendant in the Cincinnati Complaint in order to obtain this testimony. As Dollar Tree points out, "[u]nder Rule 45(c) of the Federal Rules of Civil Procedure, Cincinnati can

8

subpoena Zephyr for both deposition testimony and trial testimony if it so chooses." ECF 12 at 12-13. There has been no suggestion in any of the briefing that Rule 45(c) is incapable of allowing the parties to obtain whatever testimony and/or documents they may need from Zephyr.

Cincinnati Insurance also argues that Zephyr is included as a defendant "to preclude any future argument that the Court's declaration in the subject case has no application to them, in accordance with the Ohio Superior Court's [sic] ruling in *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 931 N.E.2d 548, 2010-Ohio-3264."[4] ECF 1-16, Cincinnati Complaint ¶ 37. According to Cincinnati Insurance, *Estate of Heintzelman* requires it to include "an insurer's named insured as an indispensable party to the dec action." ECF 16 at 3. However, this case is inapplicable to Zephyr and Cincinnati Insurance. In *Estate of Heintzelman*, the Supreme Court of Ohio held that:

> [p]ursuant to the statutory scheme set forth in R.C. 3929.06, 2721.02, and 2721.12, a declaratory judgment action between an insured and insurer seeking a declaration on the applicability of coverage for injuries to a plaintiff caused by the insured is binding upon that plaintiff only if the declaratory judgment action is initiated by the insured or if the plaintiff is joined as a party in the declaratory judgment action.

2010-Ohio-3264, ¶ 26, 931 N.E.2d 548, 554. *Estate of Heintzelman* also makes clear that this holding is only as it pertains to a "plaintiff in an R.C. 3929.06 action." *Id.* ¶ 1, 931 N.E.2d at 550. But Zephyr is not a plaintiff in an R.C. 3929.06 action, nor is it clear that it could ever be as this statute allows an injured third-party judgment creditor to file suit against the judgment debtor's liability insurer. Further, Zephyr, the purported "insured," did not initiate this declaratory action. While it may be Cincinnati Insurance's practice since *Estate of Heintzelman* was issued to "name all parties who might be affected by the Court's declaration of coverage," ECF 10 at 14, it is

---

[4] *Estate of Heintzelman* is actually an opinion from the Supreme Court of Ohio, not a lower SupeIor Court.

unclear how this holding necessitates Zephyr's inclusion in the Cincinnati Complaint.

Finally, Cincinnati Insurance argues that, contrary to Dollar Tree's assertions, it did state a colorable cause of action against Zephyr at "Paragraphs 26, 28, and 31" of the Cincinnati Complaint. ECF 10 at 13. A review of these paragraphs, however, does not reveal any such cause of action; indeed, Cincinnati Insurance seems to recognize this when it notes that these paragraphs only "raise[] the possibility (based on the underlying accusations) that [Zephyr] was negligent" in the Underlying Action. *Id.* It is unclear what cause of action this creates, let alone how Cincinnati Insurance would have standing to bring a cause of action against Zephyr for Zephyr's potential negligence against a third-party.

Cincinnati Insurance notes later in its briefing that "if [Zephyr's] conduct (independent negligence) has violated any of the provisions of the [Cincinnati] Policy, [Cincinnati Insurance] will seek summary judgment in the Dec Action to preclude any indemnity payments based on that conduct." *Id.* at 15. However, the record shows that Cincinnati Insurance "has never alleged that it is, or was ever, in a coverage dispute with Zephyr." ECF 12 at 10. Nor has Cincinnati Insurance alleged any facts suggesting there may be a coverage dispute with Zephyr in the future. And to the extent there may be a future coverage dispute between Cincinnati Insurance and Zephyr, Dollar Tree is not required to negate such a hypothetical in order to succeed on its claim of fraudulent joinder. *Cf. Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (affirming that a fraudulent joinder inquiry is based in "whether there is arguably a reasonable basis for predicting that the state law might impose liability <u>on the facts involved</u>" (emphasis added) (citation omitted)). Combining this with the absence of any demand in the Cincinnati Complaint for a declaration against Zephyr, this Court cannot find any reasonable basis for a colorable state law claim.

Considering all of the above, this Court finds that Zephyr was fraudulently joined to the Cincinnati Complaint in order to defeat federal diversity jurisdiction. Accordingly, Zephyr must be dismissed and the Court has proper subject-matter jurisdiction over this case. For this reason, Cincinnati Insurance's Motion to Remand, which was based on a lack of subject-matter jurisdiction, is denied.

### B. Anticipatory Declaratory Judgment

Dollar Tree asks this Court to dismiss the Cincinnati Complaint pursuant to its inherent discretionary powers "because this action constitutes an anticipatory declaratory judgment action that will not settle the controversy or serve a useful purpose, and the Dollar Tree Complaint serves as a more effective remedy to this dispute." ECF 8-1 at 9-10. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)). "[C]ourts within this Circuit generally consider the *Grand Trunk* factors in determining whether to apply the anticipatory action exception to the first-to-file rule in the context of declaratory judgment actions[.]" *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F.Supp.3d 646, 662 (N.D. Ohio 2019). Those factors are:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)

(citations omitted). As both the Cincinnati Complaint and Dollar Tree Complaint are in federal court, the fourth factor carries no weight in this analysis. The remaining factors, however, weigh heavily in favor of dismissing this action.

As to the first factor, it is clear that the Cincinnati Complaint would not settle the controversy, as Dollar Tree has raised claims in its complaint that are separate and apart from the coverage denial issue. *See Mazzarella v. Amica Mut. Ins. Co.*, 774 F. App'x 14, 17–18 (2d Cir. 2019) (acknowledging that claims not based on an improper denial of coverage, such as failure to investigate the claim fully and failure to promptly respond to the claim, can be separate and distinct from claims solely based on an improper interpretation of the policy at issue); *see also* Complaint ¶ 5, *Dollar Tree Stores Inc. v. Cincinnati Ins. Co.*, Case No. 3:25-cv-01340 (D. Conn. Aug. 20. 2025) (including in the Dollar Tree Complaint claims under the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110b, and Connecticut Unfair Insurance Practices Act, C.G.S. § 38a-816). Dollar Tree's claims based in Connecticut state law for unfair trade and insurance practices cannot be resolved by the Cincinnati Complaint, which seeks only declarations for insurance coverage based on Ohio contract and insurance law. It naturally follows that the Dollar Tree Complaint, which also includes requests for declarations regarding coverage under the Cincinnati Policy, is the "more effective" remedy to completely resolve all claims at issue between these parties, as contemplated by the fifth *Grand Trunk* factor. To the extent Dollar Tree is concerned about ensuring that Ohio law is applied to contract interpretation, when appropriate, a federal judge (even located in Connecticut) is well-equipped to apply law from the non-forum state when a choice of law analysis so requires.

The second factor, whether the Cincinnati Complaint would serve a useful purpose in clarifying the legal relations in issue, is closely related to the first factor. This is because "it is

almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (alternation in original) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008)). As previously established, this Court finds that the Cincinnati Complaint will not settle the controversy in this matter. However, the Cincinnati Complaint will clarify the legal relations at issue. Dollar Tree remains a defendant in the Underlying Action, though it appears that the parties have reached a settlement in the Underlying Action. *See* Caseflow Request, *Pellot v. Dollar Tree Stores Inc.*, Case No. FBT-CV22-6118553-S (Conn. Super. Ct. Nov. 10, 2025), Dkt. No. 205.00 (parties jointly requesting a remote status conference because "Plaintiff has reached settlement in her claims against the Defendants"). The Cincinnati Complaint would determine whether or not Cincinnati Insurance has an obligation to defend and indemnify Dollar Tree under the Cincinnati Policy, and subsequently whether Cincinnati Insurance must reimburse Dollar Tree for its expenses in the Underlying Action, as well as any settlement amount paid to Pellot. However, the Dollar Tree Complaint is equally capable of clarifying the legal rights of the parties. Accordingly, this factor only weighs slightly in favor of exercising jurisdiction.

The third factor weighs perhaps most heavily of all against entertaining the Cincinnati Complaint. Courts in this Circuit "have noted that the usefulness of a declaratory judgment action is significantly curtailed once a subsequent, coercive suit is filed." *J.M. Smucker*, 420 F. Supp. 3d at 663 (citing *AmSouth*, 386 F.3d at 788). This is because "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth*, 386 F.3d at 788. "Courts take a dim view of declaratory

13

plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Id.*; *see also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (the Declaratory Judgment Act "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." (internal quotation marks omitted)); *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 523 (6th Cir.2000) ("[A] rule permitting [this sort of declaratory] action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation," regardless of the actual motives of the declaratory plaintiff); *BASF Corp. v. Symington*, 50 F.3d 555, 558–59 (8th Cir.1995) ("[D]eclaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit." "[T]he natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances.").

A review of the record in this case leads "to the unavoidable conclusion that procedural fencing has occurred." *AmSouth*, 386 F.3d at 789. Dollar Tree first attempted to file its coercive action against Cincinnati Insurance via its Motion to Implead in the Underlying Action on July 28, 2025. ECF 8-1 at 13. That same day, Dollar Tree provided Cincinnati Insurance a courtesy copy of that filing and expressly told Cincinnati Insurance—in no uncertain terms—that "[s]hould we somehow be denied leave to file for any reason, **we will be immediately re-filing suit in the United States District Court for the District of Connecticut**." ECF 8-8, July 28, 2025 Dollar Tree Email to Cincinnati Insurance (emphasis added). Cincinnati Insurance was, without a doubt, on notice of Dollar Tree's intention to re-file its suit in Connecticut federal court once the motion

to implead was denied. "Within <u>four days</u> of the Court in the Underlying Action denying Dollar Tree's Motion to Implead, Cincinnati . . . raced to the Courthouse in Ohio to deny Dollar Tree of its chosen forum." ECF 8-1 at 13 (emphasis in original). It is well-recognized that the "first-to-file rule is particularly anemic where the first-filed lawsuit is a declaratory judgment action . . . A first-filed declaratory judgment action should ordinarily give way to a later-filed substantive suit unless 'some additional harm, not merely waiting for the natural plaintiff to sue, will befall the declaratory plaintiff in the meantime.'" *Nationwide Affordable Hous. Fund 27, LLC v. Urb. 2004 Holding Co.*, Case No. 2:20-CV-1762, 2020 WL 3642575, at *2 (S.D. Ohio July 6, 2020) (citation omitted) (quoting *AmSouth*, 386 F.3d at 786). Even if Cincinnati Insurance is correct in that Ohio is an appropriate forum, "whether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred." *AmSouth*, 386 F.3d at 789. Instead, "[t]he appropriate question is not whether a party has chosen a better forum but rather whether the declaratory plaintiff filed first to choose the forum." *Cath. Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, 795 (N.D. Ohio 2013). The bad faith attempt by Cincinnati Insurance to deprive Dollar Tree of its preferred forum could not be more clear.

Considering all five of the *Grand Trunk* factors collectively, it is clear that they weigh heavily against exercising jurisdiction over the Cincinnati Complaint. As such, this Court declines to exercise its discretionary jurisdiction over a declaratory action and dismisses the Cincinnati Complaint.

### C. Personal Jurisdiction[5]

Dollar Tree also argues that dismissal of the Cincinnati Complaint is appropriate under Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over it. *See* ECF 8-1 at 6-9. Unlike subject-matter jurisdiction, even in the removal context the plaintiff bears the burden of proving the court's personal jurisdiction over each individual defendant. *See Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014). "This is because, without personal jurisdiction, the district court has no authority to proceed to an adjudication." *Dugger v. Honeywell Int'l, Inc.*, No. 1:21-cv-00892, 2021 WL 5961624, at *3 (N.D. Ohio Dec. 16, 2021) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

Cincinnati Insurance's argument that personal jurisdiction exists over Dollar Tree is somewhat confusing. At one point, Cincinnati Insurance argues that personal jurisdiction exists because "Dollar Tree stores appear to be located in Lorain County." ECF 11 at 5. At another point, Cincinnati Insurance argues that "Dollar Tree's [personal jurisdiction] arguments fail completely when you add the party, Zephyr, into their allegation claiming that there is no personal jurisdiction" seemingly because Cincinnati Insurance "has a policy of insurance issued to Zephyr, located in Avon, Ohio, who then contracted with Dollar Tree, who has stores located in Lorain, Ohio." *Id.* Both arguments fail.

Because personal jurisdiction is predominately a matter of state law, federal courts sitting in diversity look to the law of the forum state to determine whether personal jurisdiction exists. *See, e.g.*, *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023) ("Federal courts start with state law

---

[5] Again, it is unclear to this Court why Norma Pellot, the plaintiff in the Underlying Action, is named as a defendant in the Cincinnati Complaint – a complaint that exclusively deals with an insurance contract that has nothing to do with Pellot. However, Pellot has not made any appearance since the Cincinnati Complaint was removed to federal court, and neither Cincinnati Insurance nor Dollar Tree makes any arguments regarding her status in this case in their motion practice. In any event, whether the Court has personal jurisdiction over her has no bearing on its disposition of this case, and so the Court will not address it.

in determining whether they have personal jurisdiction over a defendant in a diversity case." (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014))). Ohio law authorizes a court to exercise personal jurisdiction over non-resident defendants "only if (1) the long-arm statute confers jurisdiction, and (2), jurisdiction is proper under the Federal Due Process Clause." *Dugger*, 2021 WL 5961624, at *4 (citing *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012)). Here, the parties do not dispute that Dollar Tree's business transactions within Ohio satisfy at least one of the nine enumerated criteria under the state's long-arm statute, O.R.C. § 2307.382(A). *See* ECF 8-1 at 7; ECF 11 at 4-5. Requiring Dollar Tree to litigate the claims against it in this court, however, fails to comport with due process.

Federal due process encompasses two types of personal jurisdiction: "general jurisdiction, when the suit does not arise from [the] defendant's contacts with the forum state; and specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn*, 667 F.3d at 712-13. A non-resident defendant is subject to general jurisdiction in Ohio only where his contacts with the state are "continuous and systematic." *Id.* at 713. Specific jurisdiction, on the other hand, is comprised of three elements:

> First, the defendant must purposefully avail himself of the privilege of acting or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002)). Put simply, due process requires "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

This case concerns an insurance dispute arising out of a personal injury action in the state of Connecticut. Although Cincinnati Insurance is correct in asserting that "[t]he Contracts, which are at issue, are Ohio contracts entered into by the parties in Ohio," the Cincinnati Policy (which encompasses the noted contracts) was entered into by and between Cincinnati Insurance and Zephyr — and Cincinnati Insurance and Zephyr alone. ECF 1-16, Cincinnati Complaint ¶ 7. But "Dollar Tree did not negotiate the Policy, purchase the Policy, pick the Policy, or pick the state from which the Policy would be written." ECF 8-1 at 9. Accordingly, the Cincinnati Complaint does not arise from Dollar Tree's contacts with the state of Ohio. Nor could Dollar Tree have expected to be "haled into [an Ohio] court" when it had no hand in the creation or terms of the insurance policy at issue. *Burger King Corp.* 471 U.S. at 474; *see also Cincinnati Ins. Co. v. LOMC LLC*, 2022-Ohio-930, ¶ 34 (Ct. App.) (refusing to assert personal jurisdiction over a non-resident defendant who had no connection to the insurance policy in dispute other than as an alleged "additional insured"). Thus, forcing Dollar Tree into an Ohio court to litigate the claims against it fails to comport with the requirements of due process.

Accordingly, even if the *Grand Trunk* factors weighed in favor of exercising jurisdiction over the Cincinnati Complaint, this Court would still be required to dismiss this case for want of personal jurisdiction.

## IV. CONCLUSION

For these reasons, this Court hereby **GRANTS** Dollar Tree's Motion to Dismiss **WITHOUT PREJUDICE**. Cincinnati Insurance's Motion for Remand is **DENIED**.

                      **IT IS SO ORDERED.**

Dated: November 14, 2025                    */s/ Dan Aaron Polster*
                                                        **Dan Aaron Polster**
                                                        **United States District Judge**